IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00845-PAB

SYLVIA M. ASTEN,

      Plaintiff,

v.

CITY OF BOULDER, a Colorado municipality,
PATRICK COMPTON, in his individual and official capacities, and
JEREMY FRENZEN, in his individual and official capacities,

      Defendants.

_____

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**
_____

Plaintiff Sylvia Asten filed this civil rights action against defendants the City of

Boulder and police officers Patrick Compton and Jeremy Frenzen, in their official and

individual capacities.  The case arises out of an altercation that occurred at Ms. Asten's

house in Boulder, Colorado.  The matter is presently before the Court on defendants'

motion to dismiss [Docket No. 6].  Jurisdiction is based upon 28 U.S.C. § 1331,

providing this Court with jurisdiction over federal questions.

**I. BACKGROUND**

**A.  Factual Background**

The following facts are taken from Ms. Asten's Complaint and are presumed to

be true for the purposes of this Order.  In the early morning of October 1, 2006,[1] Ms.

_____

[1]  The events at issue in this case all happened in October of one year.  However, in her
Complaint and her response to defendants' motion to dismiss, Ms. Asten asserts three different
years in which the events at issue occurred – 2005, 2006, and 2007.  *See* Compl. and Jury

Asten, under the mistaken belief that she was being attacked, went into the street in front of her house in Boulder, Colorado and began shouting at her imaginary assailants. Police officers from the City of Boulder Police Department were dispatched to plaintiff's house and detained her after making an initial decision to place her on a seventy-two-hour mental health hold.  However, once it was determined that Ms. Asten did not meet the criteria for hospitalization, she was released and allowed to return to her home.

In the late evening of that same day, Ms. Asten's neighbors called the non-emergency phone number for the Boulder Police Department to report that Ms. Asten once again was shouting in the street in front of her house.  Defendants Compton and Frenzen, officers with the Boulder Police Department, were dispatched to the location. By the time defendants Compton and Frenzen arrived, Ms. Asten had stopped shouting and returned to her home.  The officers located Ms. Asten inside her home with her screen door closed and locked, but with the inner door ajar.  As the officers approached the locked screen door, Ms. Asten came to meet them on the other side, leaving the screen door secured.  The officers report that Ms. Asten was making incoherent statements including a comment about how the screen door was the only thing keeping her safe.

The officers attempted to talk to Ms. Asten and asked for permission to enter her home.  She declined and instead attempted to close the inner door.  Due to an obstruction, she was unable to do so after three tries.  However, in the process of

---

Demand [Docket No. 1] ¶¶ 8, 9; Pl.'s Resp. Re: Defs.' Mot. to Dismiss [Docket No. 9] at 4.  For purposes of this Order, I accept the year about which there appears to be most agreement among the parties, 2006.

attempting to close her door, Ms. Asten broke a water glass that she had been holding during the exchange.  The officers then attempted to open the screen door and enter plaintiff's home even though they had been denied permission to do so.  This caused Ms. Asten to become terrified, and she shouted for the officers to leave her alone. Because the screen door was locked, Officer Compton used a knife to cut the screen to open the door.  This again caused Ms. Asten to become terrified, and she demanded that the officers leave her property.

Officer Frenzen then stuck his taser gun through the hole in the screen door that Officer Compton had just cut and shot Ms. Asten in the stomach with a high-voltage electric pulse.  Plaintiff immediately fell to the floor and screamed in pain.  The officers placed her in handcuffs, while plaintiff screamed, struggled, and begged the officers to leave her be.  According to Ms. Asten's account, the officers at no time issued warnings or commands to Ms. Asten or informed her of their intent to take her into custody.

Officer Compton completed a mental health evaluation form and plaintiff was transported against her will to a local hospital.  As a result of Officer Compton's mental health evaluation form, Ms. Asten was held, without her consent, for more than two weeks in various mental health facilities.

### B.  Procedural Background

On April 23, 2008, Ms. Asten filed her Complaint in this case, alleging six claims for relief against Officers Compton and Frenzen and the City of Boulder under 42 U.S.C. § 1983.[2]  Those of Ms. Asten's claims that appear to be against Officers

---

[2] As the defendants indicate in their motion to dismiss, plaintiff's Complaint does not make it entirely clear which claims she asserts against which defendants.  Although plaintiff

Compton and Frenzen are: "Unconstitutional Use of Excessive Force, Unlawful Seizure of a Person, Unreasonable Use of a Taser" (first claim for relief); "Unconstitutional Use of Deadly Force" (second claim for relief); and "False Imprisonment" (sixth claim for relief).  Ms. Asten's "*Monell* claims" against the City of Boulder are for: "Unconstitutional Municipal Policy" (third claim for relief); "Unlawful Policy by Acts of Official Policy Maker" (fourth claim for relief); and "Constitutional Violations from Informal Custom and Policy" (fifth claim for relief).

On July 8, 2008, the defendants filed a joint motion to dismiss each of Ms. Asten's claims.  *See* Defs.' Mot. to Dismiss [Docket No. 6].  Defendants seek dismissal of all six claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and, alternatively, of the claims against the officers individually on qualified immunity grounds.  On August 16, 2008, plaintiff responded to the motion to dismiss.  *See* Pl.'s Resp. Re: Defs.' Mot. to Dismiss [Docket No. 9].  On September 2, 2008, defendants filed a reply in support of their motion to dismiss.  *See* Defs.' Reply in Supp. of Mot. to Dismiss [Docket No. 10] ("Defs.' Reply").  Defendants' motion to dismiss is fully briefed and ripe for review.

## II.  ANALYSIS

### A.  Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  For a complaint to state a claim it must contain "a short and plain statement of the claim

---

treads dangerously close to deficient pleading because of this fact, *see Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008), defendants ultimately were able to discern against whom each claim rested, and were not prejudiced by any uncertainty.

showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Rule 8(a)'s "short and plain statement" mandate requires that a plaintiff allege enough factual matter that, taken as true, makes her "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, a court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erikson v. Pardus*, 551 U.S. 89, 95 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (omission marks omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson*, 534 F.3d at 1286.

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct.

5

1937, 1950 (2009) (internal quotation marks and alteration marks omitted).  Thus, even

though modern rules of pleading are somewhat forgiving, "a complaint still must contain

either direct or inferential allegations respecting all the material elements necessary to

sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286

(alteration marks omitted)).  In other words,

> [i]f a complaint explicitly alleges every fact necessary to win at trial, it has
> necessarily satisfied this requirement.  If it omits some necessary facts, however,
> it may still suffice so long as the court can plausibly infer the necessary
> unarticulated assumptions.  But if the complaint is sufficiently devoid of facts
> necessary to establish liability that it encompasses a wide swath of conduct,
> much of it innocent, a court must conclude that plaintiffs have not nudged their
> claims across the line from conceivable to plausible.  Plaintiffs thus omit
> important factual material at their peril.

*Bryson*, 534 F.3d at 1286 (internal citations, quotation marks, and alterations marks

omitted).

The pleading rules serve two purposes: (1) they ensure that defendants know

the actual grounds of the claims against them, allowing them to prepare a defense; and

(2) they avoid the costly undertaking of civil discovery on claims that are largely

groundless.  *Bryson*, 534 F.3d at 1287.

**B.  Pleading § 1983 Claims**

Plaintiff brings all of her claims under 42 U.S.C. § 1983.  Claims under § 1983

require a plaintiff to sufficiently allege that: (1) she has been deprived of a federal right

and (2) that the person who deprived her of that right acted under color of state law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  The federal rights of which Ms. Asten

claims she was deprived will be addressed below according to the party accused.  As

for the second prong, Ms. Asten has pled facts sufficiently showing that the defendants

are state actors who operated under color of state law.  *See* Compl. and Jury Demand

[Docket No. 1] ("Compl.") ¶¶ 2, 3.  Finally, municipalities such as the City of Boulder are

deemed to be "persons" under § 1983 and, therefore, may be liable for violations of an

individual's federal rights.  *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658,

690–91 (1978).

### C.  Claims Against the Officers Individually

#### 1.  Nature of Plaintiff's Claims

As a preliminary matter, I address the form of plaintiff's Complaint.  Despite the

various labels, Ms. Asten's claims against Officers Compton and Frenzen amount to

three theories for relief: unlawful arrest and detention in violation of the Fourth and

Fourteenth Amendments;[3] use of excessive force in effectuating an arrest in violation of

the Fourth Amendment;[4] and deprivation of due process in violation of the due process

clause of the Fourteenth Amendment.[5]

---

[3] The Fourth Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment.  *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).  For ease of reference going forward, I refer to only the Fourth Amendment.

[4] A plaintiff may assert separate and independent Fourth Amendment claims for unlawful arrest and for excessive force in a single case.  *See Cortez v. McCauley*, 478 F.3d 1108, 1126-27 (10th Cir. 2007) ("We hold that in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it. . . . The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither.").

[5] Plaintiff has failed to coherently articulate any other theories justifying relief against the officers.  Therefore, to the extent that plaintiff intended to assert additional claims, they are deemed inadequate under Rule 12(b)(6) for failing to give proper notice to the defendants.  *See Robbins*, 519 F.3d at 1249 (the pleading standard requires plaintiffs to provide "enough allegations to give the defendants notice of the theory under which their claim is made").

Plaintiff's second claim for relief, her so-called "Unconstitutional Use of Deadly Force" claim, is but a variation of her first claim for "Unconstitutional Use of Excessive Force" and "Unreasonable Use of a Taser."  Contrary to plaintiff's belief, it does not matter at the pleading stage whether her claim is characterized as one for excessive force or deadly force.  The Supreme Court in *Scott v. Harris* explained that the question in every Fourth Amendment excessive force case is whether the amount and nature of the force used in a particular situation was unreasonable.  550 U.S. 372, 383 (2007) ("Whether or not [the defendant's] actions constituted application of 'deadly force,' all that matters is whether [the defendant's] actions were reasonable."); *see Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) ("Claims that state actors used excessive force – deadly or not – in the course of a seizure are analyzed under the Fourth Amendment's reasonableness standard.").

Therefore, pursuant to Federal Rule of Civil Procedure 12(f) – "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" – plaintiff's second claim for relief is stricken as redundant.

Plaintiff's sixth claim for relief, entitled "False Imprisonment," appears to complain of both an unlawful arrest and detention and a due process violation.[6]  As the Tenth Circuit has explained, "two claims arise from an allegedly unconstitutional imprisonment as analysis 'shifts' from the Fourth Amendment to the Due Process Clause."  *Mondragón v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008) (internal

---

[6] Plaintiff's assertions under this claim as well as her statements elsewhere in the Complaint indicate that she only brings constitutional claims in this action.  There is no indication that she intended to assert the state tort claim of "False Imprisonment."  *Cf.* CJI-Civ. § 21:1 (2008); *Blackman v. Rifkin*, 759 P.2d 54, 58 (Colo. App. 1988).

citation omitted).  The "shift" occurs with the institution of legal process – that is, with the inception of the process meant to justify the imprisonment.  *Mondragón*, 519 F.3d at 1083.  Claims regarding an individual's treatment during "the period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment."  *Mondragón*, 519 F.3d at 1083.  Claims regarding an individual's treatment after the institution of process and prior to the favorable termination of that process – through acquittal, habeas corpus, voluntary dismissal, and so on – forms a second claim, this one arising under the Due Process Clause.  *Mondragón*, 519 F.3d at 1083.

It is not entirely clear whether or when Ms. Asten received the legal process contemplated in *Mondragón*.  To the extent that her sixth claim for relief – for "False Imprisonment" – is directed at the treatment she received prior to the employment of legal process, such a claim falls under the Fourth Amendment.  Furthermore, this claim for relief is repetitive of Ms. Asten's first claim for relief which asserts an "Unlawful Seizure of a Person."  Therefore, the unlawful arrest and detention aspect of the sixth claim is duplicative, and it, too, is stricken under Federal Rule of Civil Procedure 12(f).  Ms. Asten's assertions in her sixth claim regarding her alleged deprivation of due process are addressed below.

Therefore, in an attempt to bring order to plaintiff's Complaint, going forward I evaluate the viability of plaintiff's three cognizable claims against the individual police officers: unlawful arrest and detention in violation of the Fourth Amendment; use of excessive force in effectuating an arrest in violation of the Fourth Amendment; and violation of due process under the Fourteenth Amendment.

9

### 2. Qualified Immunity

Officers Compton and Frenzen assert a qualified immunity defense to Ms. Asten's claims against them individually.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis.  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008).  Until recently, the plaintiff was required to "first establish that the defendant's actions violated a constitutional or statutory right."  *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).  After establishing that threshold question, the plaintiff had to establish that the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Supreme Court recently altered the qualified immunity analysis by holding that the "mandatory, two-step rule for resolving all qualified immunity claims should not be retained."  *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).  Instead, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 129 S. Ct. at 818.

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right.  *See*, *e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007).  On the other hand, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Casey*, 509 F.3d at 1283-84 (quoting *Saucier*, 533 U.S. at 202); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."  *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted). However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

That being said, factual novelty alone will not automatically provide a state official with the protections of qualified immunity.  *See Casey*, 509 F.3d at 1284 (noting that in the Fourth Amendment context, "there will almost never be a previously published opinion involving exactly the same circumstances"); *Blake*, 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks omitted)).  The Tenth Circuit employs a "sliding scale" in identifying

clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey*, 509 F.3d at 1284 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

Where a qualified immunity defense is implicated, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal citation and quotation marks omitted).  The two purposes of the pleading rules discussed above – ensuring that defendants know the actual grounds of the claims against them and avoiding the costly undertaking of civil discovery on claims that are largely groundless – have special significance where defendants raise a qualified immunity defense.  "Without allegations sufficient to make clear the grounds on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established." *Robbins*, 519 F.3d at 1249 (internal citation and quotation marks omitted).  Furthermore, "[q]ualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S. Ct. at 815.  Qualified immunity provides a defense to trial and the other burdens of litigation such as discovery, rather than just liability.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by*

*Pearson v. Callahan*, 129 S. Ct. 808 (2009).  Therefore, a court is to resolve questions

of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton*,

483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity

challenge still does not have a heightened pleading standard.  *Currier v. Doran*, 242

F.3d 905, 916-17 (10th Cir. 2001).

### 3. First Claim for Relief – Violation of Fourth Amendment (Unlawful Arrest and Detention)

#### a. Constitutional Violation

"The Fourth Amendment protects the right of individuals to be free from improper

arrest and detention."  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir.

2008); *see* U.S. CONST. amend. IV ("The right of people to be secure in their persons .

. . against unreasonable seizures . . . shall not be violated.").  In order to state a claim of

unlawful arrest and detention under the Fourth Amendment, the facts asserted in a

complaint must show that it is plausible that both a "seizure" occurred and that the

seizure was "unreasonable."  *See Turner v. Schultz*, 130 F. Supp. 2d 1216, 1225 (D.

Colo. 2001) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

A "seizure" for the purposes of the Fourth Amendment occurs when a

government actor terminates one's freedom of movement through means intentionally

applied.  *Brower*, 489 U.S. at 596–97; *Scott v. Harris*, 550 U.S. 372, 381 (2007).

"Whenever an officer restrains the freedom of a person to walk away, he has seized

that person."  *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

"[A] warrantless arrest by a law officer is reasonable under the Fourth

Amendment where there is probable cause to believe that a criminal offense has been

or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Accordingly, when a warrantless arrest is the subject of a § 1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause." *Buck*, 549 F.3d at 1281. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). The probable cause requirement of the Fourth Amendment applies whenever the government takes a person into custody against his or her will, including for emergency mental health reasons. *Pino v. Higgs*, 75 F.3d 1461, 1467-68 (10th Cir. 1996).

Ms. Asten alleges that Officers Compton and Frenzen violated her constitutional rights by arresting and detaining her for an emergency mental health evaluation and causing her to be held for a subsequent two-week involuntary stay without probable cause. Ms. Asten has pled that a "seizure" for purposes of the Fourth Amendment occurred. Defendants, however, contend that the facts evince a scenario in which the officers had probable cause to arrest and detain Ms. Asten. They argue that they were authorized by Colorado law to do so.

Colorado law authorizes a police officer to arrest and detain a person for an emergency mental health evaluation where "there are reasonable grounds to believe that a person is a danger to himself or herself, to others, or is gravely disabled." *People v. Marquez-Lopez*, 952 P.2d 788, 791 (Colo. App. 1997); *see* Colo. Rev. Stat. Ann. § 27-10-105(1)(a) (West 2009). Colorado law defines "gravely disabled" as

> a condition in which a person, as a result of a mental illness: (I) Is in danger of serious physical harm due to his or her inability or failure to

14

provide himself or herself with the essential human needs of food, clothing, shelter, and medical care; or (II) Lacks judgment in the management of his or her resources and in the conduct of his or her social relations to the extent that his or her health or safety is significantly endangered and lacks the capacity to understand that this is so.

Colo. Rev. Stat. Ann. § 27-10-102 (West 2009); *see Marquez-Lopez*, 952 P.2d at 791.

Section 27-10-105 explicitly requires that probable cause exist for invoking that section's emergency arrest and detention procedures. Colo. Rev. Stat. Ann. § 27-10-105(1)(a)(I) (West 2009); *see Marquez-Lopez*, 952 P.2d at 790-91. This Court's unlawful seizure analysis properly considers state involuntary commitment law in evaluating whether probable cause existed under the Fourth Amendment. *See Pino v. Higgs*, 75 F.3d 1461, 1468 (10th Cir. 1996). Therefore, the question under Ms. Asten's unlawful arrest and detention claim is whether Officers Compton and Frenzen had probable cause to believe that Ms. Asten was a danger to herself, to others, or was gravely disabled, justifying her arrest and detention.

The facts alleged in Ms. Asten's Complaint indicate that in the early morning of October 1, 2006, Ms. Asten went into the street in front of her home screaming at imaginary attackers. The police arrived and completed a 72-hour-hold form for an emergency mental health evaluation. After it was determined that Ms. Asten did not meet the criteria for hospitalization, she was released. Several hours later, in the late evening of that same day, Ms. Asten was again seen yelling in the street. By the time Officers Compton and Frenzen arrived, Ms. Asten had already returned to her home. When questioned by the officers, Ms. Asten made incoherent statements including a statement that her screen door was all that was keeping her safe. When Ms. Asten attempted unsuccessfully to close her inner door, she broke a water glass she was

15

holding.  Plaintiff appears to allege that the breaking of the glass was accidental, and in this procedural posture I make that inference in her favor.  Officers Compton and Frenzen shot Ms. Asten with a taser, handcuffed her, and she was transported to a local hospital where she was held against her will for two weeks.

Within the probable cause analysis, courts are to consider whether the totality of the facts and circumstances within the officers' knowledge – and of which they have reasonably trustworthy information – is sufficient in itself to warrant a man of reasonable caution in the belief that an offense has been or is being committed.  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008)*; Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008).  This exercise is an objective one; the officers' subjective beliefs are not considered.  *Fogarty*, 523 F.3d at 1156.

According to the Complaint here, Officers Compton and Frenzen knew that Ms. Asten had repeated episodes or a single ongoing episode of delusion over the course of a day, that it was determined earlier in the day that she did not meet the criteria for hospitalization, that at the time Officers Compton and Frenzen encountered her, she continued to make incoherent statements, and that she accidentally broke a water glass while attempting to keep the police out of her home.

The existence of probable cause to arrest in a civil rights case – as opposed to in a criminal case – is generally a question for a jury.  *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990).  "[W]here there is a question of fact or 'room for a difference of opinion' about the existence of probable cause, it is a proper question for a jury." *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007); *see also Valdez v. Black*, 446 F.2d 1071, 1077 (10th Cir. 1971).  However, the existence of probable cause may still

16

be decided as a matter of law where there is only one reasonable determination regarding the issue.  *See*, *e.g.*, *Bruner*, 506 F.3d at 1028; *West v. Keef*, 479 F.3d 757, 759-60 (10th Cir. 2007); *Pino*, 75 F.3d at 1468-69; *see also Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) ("In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.") At this point in time, there is room for a difference of opinion on the probable cause question in this case and therefore, it may not be decided as a matter of law.

Therefore, Ms. Asten has pled properly facts that show that it is plausible that Officers Compton and Frenzen arrested and detained her without probable cause in violation of the Fourth Amendment.

### b.  Clearly Established Law

"In the context of an unlawful arrest our analysis is simple, for the law was and is unambiguous: a government official must have probable cause to arrest an individual." *Buck*, 549 F.3d at 1286 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1158-59 (10th Cir. 2008)).  Furthermore, it is also clearly established that the Fourth Amendment applies whenever the government takes a person into custody against his or her will, including for emergency mental health detentions.  *Pino v. Higgs*, 75 F.3d 1461, 1467-68 (10th Cir. 1996) ("Because a seizure of a person for an emergency mental health evaluation raises concerns that are closely analogous to those implicated by a criminal arrest, and both are equally intrusive, we conclude that the 'probable cause' standard applies . . . .").  Therefore, it is, and was at the time of Ms. Asten's detention, clearly established that a police officer may not arrest and detain an individual for a purported mental

health emergency unless that officer has probable cause for such action.  As a result, at this stage in the case, Officers Compton and Frenzen are not entitled to qualified immunity on Ms. Asten's unlawful arrest and detention claim.

### 4. First Claim for Relief – Violation of Fourth Amendment (Excessive Force)

#### a. Constitutional Violation

The Fourth Amendment also prohibits seizures which are unreasonable because excessive force was used to effectuate them.  In order to state a claim of excessive force under the Fourth Amendment, the facts asserted in a complaint must show that it is plausible that both a "seizure" occurred and that the seizure was "unreasonable." See Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)).

"We analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment."  Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).  "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances."  Buck, 549 F.3d 1269, 1287-88 (quoting Marquez, 399 F.3d at 1220).  The heavily fact-dependent determination of whether the force used was excessive, combined with assertions that this is a legal question, see Scott v. Harris, 550 U.S. 372, 381 n.8 (2007); Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009); Mecham v. Frazier, 500 F.3d 1200, 1203-04 (10th Cir. 2007), make

18

identifying a cohesive pleading standard a significant challenge.  *Cf. Cortez v. McCauley*, 478 F.3d 1108, 1145 (10th Cir. 2007) (Gorsuch, J., concurring in part and dissenting in part) ("Since the Supreme Court's command in *Graham* that excessive force claims arising from a seizure are to be analyzed under the Fourth Amendment rather than through some other (e.g., Fourteenth Amendment) constitutional lens, the courts of appeals have struggled to define the nature and quantum of the force required to state a claim." (internal citation omitted)).

Ms. Asten's Complaint in this case alleges that both defendants used excessive force by deploying a taser to detain Ms. Asten.  *See* Compl. ¶¶ 22.a, 22.b, 22.c. However, the facts averred in the Complaint only demonstrate that Officer Frenzen applied any direct force to Ms. Asten.  For example, the Complaint states that "Officer Frenzen stuck his taser through the screen door where it was cut open and shot plaintiff in the stomach with the device" and that plaintiff "was placed in handcuffs" without mention of who applied the handcuffs.  Compl. ¶ 16.  "While a complaint must be 'short and plain,' it must also 'show' (not merely assert) that relief is appropriate if it is true." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted); *see also Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Although Ms. Asten's Complaint alleges Officer Frenzen used his taser on her, it does not show that Officer Compton applied any direct force against her.

Turning first to the allegations that Officer Frenzen used excessive force, the relevant facts from Ms. Asten's Complaint are that the officers asked for permission to

19

enter her home and she declined.  Ms. Asten then attempted to close the inner door,

was unable to, and accidentally broke a water glass that she had been holding.  The

officers then attempted to enter the home, causing Ms. Asten to become terrified and

shout at the officers to leave her alone.  Officer Compton used a knife to cut open the

screen door.  Ms. Asten again became terrified and demanded that the officers leave

her property.  Officer Frenzen then stuck his taser through the hole in the screen door

and shot Ms. Asten in the stomach with a high-voltage electric pulse.  Plaintiff fell to the

floor, at which point the officers placed her in handcuffs and transported her to a local

hospital.

The question is whether Officer Frenzen's actions were objectively reasonable.

*See Scott*, 550 U.S. at 381.  "Reasonableness is evaluated under a totality of the

circumstances approach which requires that we consider the following factors: the

severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting

to evade arrest by flight."  *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008)

(quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted).  "Additionally, we

have considered whether the officers' own reckless or deliberate conduct during the

seizure unreasonably created the need to use such force."  *Cordova*, 569 F.3d at 1188

(citing *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)) (internal quotation marks

omitted).

In the present case, these factors do not support a conclusion that the amount of

forced employed by Officer Frenzen was reasonable.  The facts as alleged do not

demonstrate that Ms. Asten had committed a crime or posed a threat to the officers or

20

third persons.  Ms. Asten was in her home and did not appear injured or suicidal upon first contact.  There are no allegations suggesting that the officers feared for the safety of other persons or pets in plaintiff's home.  Although defendants suggest that plaintiff could have left her residence and attacked other persons, *see* Defs.' Reply at 6, the Complaint alleges that Boulder police had investigated the first episode in which plaintiff imagined herself being attacked, and they decided that she did not meet the criteria for hospitalization.  Compl. ¶¶ 8-9.  Moreover, her neighbors used a non-emergency phone number to report plaintiff's behavior, suggesting that when they saw plaintiff in the street they did not regard her behavior as threatening enough to call 911.  Compl., ¶ 10.

The defendants also argue that plaintiff posed a threat to herself because of the broken glass.  However, the facts as alleged do not explain or suggest why or how the broken glass posed a threat to plaintiff.  Furthermore, if broken glass on the floor posed a threat to Ms. Asten, Officer Frenzen's use of the taser on her becomes less reasonable since it could increase the chance that she would fall to the floor and be cut.

Turning to the next factor, Ms. Asten did not actively resist arrest or attempt to evade arrest by flight.  The officers' only requests of Ms. Asten were that they be permitted to enter her home; they did not request or order that Ms. Asten surrender herself or warn her that she would be tased.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) ("The absence of any warning – or of facts making clear that no warning was necessary – makes the circumstances of this case especially troubling.").

Finally, to the extent that any force was needed, it resulted from Officer Frenzen's decision to forcibly enter and seize Ms. Asten rather than employing other

21

means.  The officers did not call for the help of someone specially trained for such situations.  *See Pino*, 75 F.3d at 1468.  As the Complaint tells the story, Officer Frenzen, while intending to take Ms. Asten into custody to protect her from herself, tased a disoriented woman who posed no danger to the officers or to others.

Defendants' attempt to analogize the facts of this case to *Hinton v. City of Elwood* is unavailing.  In that case, despite the fact that the first two factors weighed in the detainee's favor, the Court found that the police did not apply excessive force in wrestling the detainee to the ground and tasing him because he aggressively resisted after being told that he was under arrest.  997 F.2d at 781-82.  Unlike the facts in *Hinton*, here Ms. Asten was not told that she was under arrest or being detained.  Rather, when asked by the officers for permission to enter her home, she declined and attempted to close her door.  According to the facts as pled by Ms. Asten, no commands whatsoever were made to her.  Therefore, I conclude that Ms. Asten has pled enough facts to plausibly show that the nature and amount of force used by Officer Frenzen was unreasonable and in violation of her constitutional right to be free of seizures through excessive force.

Turning now to the allegation of excessive force against Officer Compton, although Ms. Asten failed to allege that Officer Compton applied any direct force against her, he may still be liable under a claim for excessive force.  "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson*

*v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  This duty encompasses the use of excessive force.  *Vondrak*, 535 F.3d at 1210 ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that excessive force is being used . . . .").  However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Vondrak*, 535 F.3d at 1210.  This final query – regarding whether there was sufficient time and ability to intercede – "is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Vondrak*, 535 F.3d at 1210.

Therefore, Officer Compton's presence as well as his alleged concerted action in accessing Ms. Asten's home by cutting a hole in the screen door lead the Court to conclude that a reasonable jury could find that Officer Compton was aware of and had the opportunity and the ability to intercede and prevent Officer Frenzen's acts.  Because, under the present procedural posture, Officer Frenzen's acts appear to amount to excessive force, I conclude that Ms. Asten has met her burden and has alleged facts that show that it is plausible that Officer Compton also violated her constitutional right to be free of excessive force.

### b.  Clearly Established Law

Defendants argue that because "[t]here is no Supreme Court or Tenth Circuit decision prohibiting an officer's use of a taser under these specific circumstances," Officer Frenzen is entitled to qualified immunity.  This position both overstates the requirements of the clearly established prong and constrains the inquiry too narrowly.

There need not be identical fact patterns in the case law for a defendant to be on notice of clearly established law.  *See Buck*, 549 F.3d at 1290 ("The law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." (internal quotation marks and alteration marks omitted)).

Furthermore, as discussed above, the excessive force determination depends heavily on the facts presented in a specific case and whether, in light of the totality of those facts, the amount and nature of the applied force was reasonable.  *See Scott*, 550 U.S. at 383 ("[W]e must still slosh our way through the factbound morass of 'reasonableness.'").

I have found no cases that categorically deem the use of a taser as either excessive or acceptable force or that exactly parallel the facts presented here.  Some cases have found the use of a similar device in certain circumstances was unreasonable.  *See*, *e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007).  Other cases have determined that use of a taser in other circumstances was reasonable.  *See*, *e.g.*, *Hinton v. City of Elwood*, 997 F.2d 774, 781-82 (10th Cir. 1993). Therefore, the use of a taser is only one fact to be considered in the overall "reasonableness" determination.

Where categorical exclusions are not present, rather than searching for precisely analogous facts, courts often look to more general principles regarding what was clearly established at the time.  *See Buck*, 549 F.3d at 1291; *Weigel*, 544 F.3d at 1154.  In the

present case, it is enough to note that "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as she did." *Casey*, 509 F.3d at 1286 (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1197 (10th Cir. 2001)).  Of particular relevance to the present case, the court in *Casey* stated that it did "not know of any circuit that has upheld the use of a Taser immediately and without warning against a misdemeanant like [the plaintiff]." *Casey*, 509 F.3d at 1286.  Therefore, under the Tenth Circuit's "sliding scale" regarding clearly established law, although identical facts cannot be found in the case law, general constitutional doctrine combined with the nature of the facts – the unforewarned tasing of a mentally unstable woman in her own home – lead the Court to conclude that the law at issue was clearly established at the time Officer Frenzen used his taser to seize Ms. Asten.

Furthermore, with regard to Officer Compton, "[i]t is 'clearly established' that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). The liability faced by an officer who fails to intercede where that officer observes or has reason to know that excessive force is being used by another officer is also clearly established.  *Vondrak*, 535 F.3d at 1210.  As a result, at this stage in the case, Officers Compton and Frenzen are not entitled to qualified immunity on Ms. Asten's excessive force claim.

### 5.  Sixth Claim for Relief – Due Process

Ms. Asten alleges that her due process rights under the Fourteenth Amendment were violated because "she was seized without due process and confined against her will for more than two weeks without due process or probable cause."  Compl. ¶ 50.  As discussed earlier in this Order, in this circuit a temporal dividing line exists regarding whether a claim is properly brought under the Fourth or Fourteenth Amendment.  Prior to the implementation of legal process, the Fourth Amendment governs; after legal process is instituted, the Fourteenth Amendment does.  *Mondragón v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).

Ms. Asten alleges that she was held for more than two weeks without due process.  Where an individual "has been imprisoned without legal process [s]he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment."  *Mondragón*, 519 F.3d at 1082.  However, "[a]fter the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim" and is brought under the Due Process Clause.  *Mondragón*, 519 F.3d at 1082.  Because Ms. Asten claims that she was held for more than two weeks *without due process*, characterizes this claim as one for "false imprisonment" rather than "malicious prosecution," and has not named in this litigation the individuals that held her during her two-week detention, I conclude that her claim covers the time period prior to the implementation of legal process.  As a result, her claim has not crossed the line from the Fourth to the Fourteenth Amendment.

Furthermore, as long as a claim is properly brought under the Fourth Amendment, a plaintiff may not assert a substantive or procedural due process claim. *See Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996) ("[Plaintiff's] claim that she was unreasonably detained and transported must be brought under the Fourth Amendment."). "To the extent that the involuntary seizure of a person for an emergency mental health evaluation mirrors a criminal arrest, the Fourth Amendment's protection against unreasonable searches and seizures more specifically applies to [plaintiff's] situation than the Fourteenth Amendment's general substantive and procedural due process guarantees." *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) (plurality opinion); *Graham v. Connor*, 490 U.S. 386, 395 (1989). Therefore, Ms. Asten has failed to state a due process claim, and what remains of her sixth claim must be dismissed.[7]

### D.  Claims Against the Officers in Their Official Capacities

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  However, "local government officials sued under § 1983 in their official capacities are one and the same as the governmental entity they represent only if the local government would be suable in its own name." *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991).  Plaintiff could not bring an unlawful arrest and detention claim or

---

[7] Plaintiff does not appear to be arguing that the defendants were responsible for an unconstitutional involuntary commitment.  *See Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000) ("The Due Process Clause prohibits a state from involuntarily committing an individual unless he is a danger to himself or others." (citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975))).

an excessive force claim against the City of Boulder in this case; therefore, she cannot bring such claims against the officers in their official capacities. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff.").

Instead, a municipality may be held liable only for injuries resulting from the execution of one of its policies or customs. *Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999). Moreover, "a municipality cannot be liable under § 1983 for acts of a municipal official in his official capacity unless that official possesses final policymaking authority to establish municipal policy with respect to acts in question." *Jantzen*, 188 F.3d at 1259. Ms. Asten has not alleged that Officers Frenzen and Compton were in policymaking positions. Therefore, her claims against the officers in their official capacities are dismissed under Rule 12(b)(6) for failure to state a claim.

### E.  Claims Against the City

As mentioned above, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

28

### *1. Third Claim for Relief – "Unconstitutional Municipal Policy"*

Ms. Asten's third claim for relief – for "Unconstitutional Municipal Policy" –

alleges that the City of Boulder had a facially unconstitutional policy regarding the use

of deadly force.  In order to state a claim for municipal liability under § 1983 for the

actions of one of its employees, a party must allege sufficient facts to demonstrate that

it is plausible (1) that a municipal employee committed a constitutional violation; and (2)

that a municipal policy or custom was the moving force behind the constitutional

deprivation.  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  The typical

"plausibility" pleading standard applies to these claims and municipalities are not

entitled to qualified immunity.  *See Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir.

2009).

Ms. Asten's "Unconstitutional Municipal Policy" claim fails under its own

reasoning.  According to her, "[t]he Boulder Police office policy on the use of deadly

force allows Boulder police to use deadly force when a police office [sic] reasonable

[sic] believes there to be an immediate threat of death or serious physical injury to

themselves or others."  Compl. ¶ 33.  According to Ms. Asten, this establishes an

impermissible subjective standard.  This is not true.  In fact, the language of the alleged

policy closely mirrors case law on the issue.  *See*, *e.g.*, *Weigel v. Broad*, 544 F.3d 1143,

1152 (10th Cir. 2008) ("Where an officer has probable cause to believe that a suspect

poses a threat of serious physical harm, either to the officer or others, it is not

constitutionally unreasonable to prevent escape by using deadly force." (quoting *Carr v.

Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003)) (alteration marks omitted)).

Ms. Asten attempts to distinguish between a reasonable belief and probable cause.  This position misunderstands the constitutional standard.  In fact, the "reasonableness" standard is built directly into the constitutional amendment under which she seeks relief.  *See* U.S. CONST. amend. IV ("The right of people to be secure in their persons . . . against *unreasonable* seizures . . . shall not be violated." (emphasis added)); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.").

Furthermore, Ms. Asten's third claim does not assert that a facially constitutional law or policy was applied in an unconstitutional manner.  *Cf. Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1280 (10th Cir. 2009) ("If a governmental entity makes and enforces a law that is unconstitutional as applied, it may be subject to liability under § 1983.").  Rather, Ms. Asten alleges that "[t]he Boulder Police office *policy* on the use of deadly force violates constitutional requirements on the use of deadly force and as a direct result of the use of the policy, defendants Compton and Frenzen caused the unconstitutional seizure of plaintiff and the unconstitutional injuries, pain and suffering of plaintiff."  Compl. ¶ 34 (emphasis added).  Because the basis for this assertion is unfounded, Ms. Asten has failed to state a claim.  Therefore, Ms. Asten's third claim for relief is dismissed pursuant to Rule 12(b)(6).

### 2. *Fourth Claim for Relief – "Unlawful Policy by Acts of Official Policy Maker"*

Ms. Asten's fourth claim – "Unlawful Policy by Acts of Official Policy Maker" – implicates the acts of the City of Boulder Police Chief.  The plaintiff labeled this claim a

"*Monell* claim" and has not named the Police Chief as an individual defendant in this case. Therefore, this claim is deemed to be against defendant City of Boulder. *See Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).

The fourth claim alleges that the police chief is an official policymaker for the City of Boulder and through him the City of Boulder formed an official policy of "endorsing the tasing of obviously disoriented, terrified and unarmed victims, arrestees and/or detainees." Compl. ¶ 39. Plaintiff also asserts that "[t]he actions of the defendants set forth above were all endorsed, approved and ratified by the Boulder City Police Chief." Compl. ¶ 39.

As explained above, plaintiff must allege sufficient facts to show that it is plausible (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). The first prong is satisfied by the earlier discussion regarding the officers' alleged Fourth Amendment violations.

The next step is identifying the policy at issue. The policies that plaintiff alleges the Police Chief established – "tasing of obviously disoriented, terrified and unarmed victims, arrestees and/or detainees" and endorsing, approving, and ratifying the tasing of individuals who have committed no crime, who pose no threat to officers or others, and who in no way resist arrest – appear to be contrary to law and unconstitutional.

Defendants are correct that where a municipal policy is not itself unconstitutional, evidence of a single incident of unconstitutional activity will not suffice to create municipal liability. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988).

31

However, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Meade*, 841 F.2d at 1529 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Meade*, 841 F.2d at 1529 (quoting *Pembaur*, 475 U.S. at 481).  And while defendants are correct that municipalities may be held liable only for their own actions, not under a theory of respondeat superior, *see Monell*, 436 U.S. at 692; *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007), the actions of officials possessing final policymaking authority can amount to acts of the municipality.  *See Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991).  The Tenth Circuit has held previously that a police commander can occupy a policymaking position.  *See Meade*, 841 F.2d at 1530.

As stated above, *Jiron* requires that the municipal policy at issue was "the moving force behind the constitutional deprivation."  392 F.3d at 419.  Plaintiff, however, makes no such allegation.  Rather, she alleges that the police chief, after plaintiff was tased and taken into custody, "endorsed, approved, and ratified" the officers' actions.  None of the allegations of the fourth claim alleges the required causal link between the alleged policy and the officers' actions.  The fourth claim, therefore, fails to state a claim for relief.

The fourth claim also fails to state a claim for relief by not pleading facts that set forth a plausible basis for an alleged constitutional deprivation.  Plaintiff has not pled

any facts to support the legal conclusion that the police chief "endorsed, approved and ratified" the officers' actions.  For example, the Complaint does not allege how the police chief learned of the officers' actions and when or how the police chief endorsed or approved them.  While a court must accept as true factual allegations in a complaint, it need not accept as true legal conclusions.  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009).  Thus, the fourth claim also fails to state a plausible claim for relief.

### 3.   *Fifth Claim for Relief – "Constitutional Violations from Informal Custom and Policy"*

Plaintiff's fifth claim for relief – "Constitutional Violations from Informal Custom and Policy" – states that "[t]he City of Boulder Police Department has an informal custom, practice or policy regarding the use of force and the use of deadly force" that is, in turn, used to improperly train its officers.  The Complaint further alleges that "[a]s part of the culture, custom and practice of the Boulder City Police officers are trained and expected to use excessive or deadly force before a person has a chance to act and consequently the Boulder City Police rely on deadly force as a primary law enforcement tool when faced with a person who may be acting in an unusual manner."  Compl. ¶¶ 43-44.

The Complaint details what Ms. Asten believes the informal policy or custom to be, including:

   a.   training officers to use taser guns in situations where the officers would prefer not to physically restrain detainees, or as in this case, where restraint is not called for or legal, instead of using a calming encounter when immediate medical help was called for;

   b.   training officers to use taser weapons instead of physical restraint and proper detention techniques;

       c.       training officers to use a taser gun as a first resort rather than other, less confrontational and less harmful methods of restraint to deal with persons with mental impairments;

       d.       improperly training and supervising officers to use deadly force as a first resort rather than training officers to assess the totality of circumstances in an objectively reasonable manner . . . .

Compl. ¶ 43.

Taken as a whole, plaintiff's description of the City of Boulder Police Department's alleged policies demonstrates that an unconstitutional policy or custom existed.  As discussed above in the context of plaintiff's excessive force claim, it is unreasonable, and thus unconstitutional, for an officer to use a high level of physical force on an individual without provocation and without warning.

Defendants contend dismissal is appropriate because plaintiff failed to offer specific facts demonstrating that City of Boulder police officers acted similarly prior to or after the incident at Ms. Asten's home.  In support of their contention, defendants rely on a series of cases from the Seventh Circuit beginning with *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985).  *Strauss* appears to place a heightened pleading standard on plaintiffs claiming municipal liability in § 1983 cases.  *See Strauss*, 760 F.2d at 767-68.  The viability of such an argument, however, was laid to rest by the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165-169 (1993) ("We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules").  The Tenth Circuit has acknowledged that in *Leatherman*, "the Supreme Court declined to apply a heightened pleading standard to §

34

1983 claims against municipalities." *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) (distinguishing typical municipal liability claims from § 1983 conspiracy claims).

It is clear that "local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Because no heightened standard exists for pleading a § 1983 claim against a municipality, Ms. Asten needs only to plead sufficient facts to show that it is plausible that (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Ms. Asten's fifth claim against defendant City of Boulder incorporates by reference a large portion of the assertions against Officers Compton and Frenzen.  As discussed earlier in this Order, those facts are sufficient to show that it is plausible that a municipal employee violated the constitution by using excessive force.  Ms. Asten asserts several purported policies or customs employed by the City of Boulder regarding the use of force.  Although devoid of specifics, such as when and how such policies were adopted, they nevertheless can be considered allowed facts and not legal conclusions for purposes of addressing defendants' motion to dismiss.  Ms. Asten then alleges that "[a]s part of the culture, custom and practice of the Boulder City Police officers are trained and expected to use excessive or deadly force" and that "[t]his custom, culture and practice inherent in the operation of the Boulder City Police . . . encourages the use of deadly force . . . ."  Compl. ¶¶ 44-45.

Therefore, the facts averred in Ms. Asten's Complaint show that it is plausible that a municipal policy or custom was the moving force behind the constitutional deprivation.  Consequently, it is at least plausible that Ms. Asten is entitled to relief on her fifth claim for relief – "Constitutional Violations from Informal Custom and Policy" – and thus this claim survives dismissal.

**III. CONCLUSION**

Pursuant to the discussion above, it is, therefore,

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 6] is GRANTED in part and DENIED in part.  Plaintiff's second, third, fourth, and sixth claims for relief are dismissed.  Defendants' motion to dismiss the following claims is denied: plaintiff's first claim for relief for unlawful arrest and detention in violation of the Fourth and Fourteenth Amendments of the United States Constitution; plaintiff's first claim for relief for use of excessive force in effecting an arrest in violation of the Fourth and Fourteenth Amendments of the United States Constitution; and plaintiff's fifth claim for relief for "Constitutional Violations from Informal Custom and Policy."

DATED August 26, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge